**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**TRACY LEE LUTZE,**

    **Plaintiff,**   **CIVIL ACTION NO. 12-cv-11339**

  **vs.**

           **DISTRICT JUDGE GERSHWIN A. DRAIN**

**COMMISSIONER OF**    **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

    **Defendant.**
_____/

<u>**REPORT AND RECOMMENDATION**</u>

  Plaintiff Tracy Lutze seeks judicial review of Defendant the Commissioner of Society Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 8) and Defendant's Motion for Summary Judgment (docket no. 9).  The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket no. 3.)  The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation pursuant to Eastern district of Michigan Local Rule 7.1(f)(2).

**I.**  **RECOMMENDATION:**

  This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 8) be GRANTED IN PART and DENIED IN PART.  Because the Court recommends granting Plaintiff's Motion in part, Defendant's Motion for Summary Judgment (docket no. 9) should be DENIED.

**II.**  **PROCEDURAL HISTORY:**

Plaintiff filed an application for Disability Insurance Benefits and an application for Supplemental Social Security Income with protective filing dates of October 2, 2008, alleging that she had been disabled since September 30, 2004, due to bipolar disorder, depression, scoliosis, and deteriorating discs. (TR 98, 206, 126.) The Social Security Administration denied benefits. (TR 42-43.) Plaintiff requested a *de novo* hearing, which was held on June 28, 2010, before Administrative Law Judge (ALJ) Andrew Sloss, who subsequently found that Plaintiff was not entitled to benefits because she was capable of performing other work in the regional economy. (TR 23-24.) The Appeals Council declined to review the ALJ's decision (TR 1), and Plaintiff commenced the instant action for judicial review. Plaintiff and Defendant each filed their Motions for Summary Judgment.

## III.    THE ADMINISTRATIVE HEARING

### A.    Plaintiff's Testimony

Plaintiff was 37 years old at the time of the administrative hearing and 33 years old at the time of alleged onset. (*See* TR 31.) She has a high-school education. (TR. 31.) Other than a two-month position at a restaurant in 2008, Plaintiff testified that she hasn't worked since September 30, 2004, because she has "a hard time standing, sitting, bending, lifting, twisting, [and] concentrating between [her] bipolar and the pain." (TR 32.) At the time of the hearing, Plaintiff had no source of income. (TR 32.) She testified that she leaves her house to go to church. (TR 34.) Plaintiff testified that she spends most of her time reading and watching television. (TR 34-35.) Plaintiff lives with her husband and (it appears) two children. (*See* TR 36.) She cooks meals for her family, but her husband and older daughter help her with housework. (TR 34.) At the time of the hearing, her son was four years old, and her family helped her care for him. (TR 36, 39.) Plaintiff testified that she was able to drive and she did go grocery shopping, but her husband and daughter helped her.

2

(TR 31, 36.)

With regard to her physical impairments, Plaintiff testified that she was diagnosed with scoliosis when she was 11 years old.  (TR 32.)  She testified that she had problems standing, bending, lifting, and carrying things.  (TR 33.)  Plaintiff told the ALJ that she could sit for about an hour and a half and then her feet start to go numb.  (TR 35.)  She stated that she could also stand for about an hour and a half.  (TR 35.)  Plaintiff testified that the heaviest thing should could lift around the house was a gallon of milk, which she could carry one hand at a time, alternating hands, for approximately 10 feet.  (TR 35, 37.)  Plaintiff also testified that she had difficulty with overhead lifting due to right-shoulder pain, which had been present for about two years, and that her hands and feet sometimes go numb.  (TR 37.)  Plaintiff stated that she could not lift, dress, or bathe her son and that she took three or four 25-minute naps every day because she could not sleep at night due to her back pain.  (TR 35-36.)  She testified that she had worn a back brace, had physical therapy, tried medication, and even had surgery in an attempt to alleviate the pain.  (TR 33.)  Plaintiff testified that she could not work a full eight-hour day, even if she could alternate between sitting and standing.  (TR 35.)

With regard to her mental illness, Plaintiff testified that she has had bipolar disorder since 1991, at which time she tried to commit suicide.  (TR 33.)  She testified that she gets easily irritated, has a hard time getting along with others, and has trouble focusing and concentrating.  (TR 33.)  Plaintiff testified that she was currently seeing a therapist and a psychiatrist and that she was on several different medications.  (TR 34.)  Plaintiff testified that her pain medications also caused her problems with concentration.  (TR 36.)

### B.     The Vocational Expert

The ALJ asked the VE to consider an individual who (1) was of the same age, education, and

3

past work experience as Plaintiff; (2) was limited to light work; (3) required the ability to sit or stand at her option for one-hour intervals; (4) was limited to unskilled work; and (5) must avoid close contact with the public. (TR 39.) The VE testified that such a person could not perform any of Plaintiff's past work. (TR 39.) The ALJ then asked if there were any jobs in the national or regional economy that such a person could perform. (TR 39.) The VE testified that such a person could perform work as an assembler, a machine operator, and an inspector, all at the light exertional level. (TR 39-40.) When asked if such a person could perform jobs if limited to a sedentary level, the VE testified that the same jobs were available at the sedentary level, albeit in lower numbers. (TR 40.) The ALJ then asked if a person who could not work a full eight-hour day five days a week would be precluded from employment. (TR 40.) The VE answered, "yes." (TR 40.)

## IV.   ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff met the disability insured status requirements through March 31, 2009; had not engaged in substantial gainful activity since September 30, 2004; and suffered from severe degenerative disc disease and bipolar disorder; she did not have an impairment or combination of impairments that met or equaled the Listing of Impairments. (TR 19.) The ALJ found that Plaintiff's allegations regarding the extent of her symptoms were not totally credible (TR 22), and although Plaintiff could not perform her past work, she had the ability to perform a limited range of light work, and there were jobs that existed in significant numbers in the economy that Plaintiff could perform. (TR 22-24.) Therefore, she was not suffering from a disability under the

Social Security Act at any time from September 30, 2004, through the date of the ALJ's decision. (TR 24.)

## V.   LAW AND ANALYSIS

4

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial

evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B.    Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step

5

sequential analysis.  In the first four steps, Plaintiff was required to show that:

> (1)     Plaintiff was not presently engaged in substantial gainful employment; and
>
> (2)     Plaintiff suffered from a severe impairment; and
>
> (3)     the impairment met or was medically equal to a "listed impairment;" or
>
> (4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).

## C.     Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)."  *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing

6

42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g).  Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).  Plaintiff argues that Defendant's decision should be reversed or remanded because the ALJ failed to properly evaluate Plaintiff's credibility, which ultimately caused the ALJ to present an improper hypothetical to the VE.  (Docket no. 8 at 6.)

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997).  But credibility assessments are not insulated from judicial review.  Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence.  *Id.*  An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not enough to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.*  "The adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *See id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not

reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2).  The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain.  *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

When making his Step 2 determination, the ALJ summarized the reports of two mental-health professionals and one physician, who conducted their assessments on behalf of Defendant. (TR 20-21.)  With regard to Plaintiff's mental health, the ALJ noted as follows:

> Treatment records indicate that her condition remained stable with treatment.  The record also does not reveal a history of any subsequent hospitalizations related to any mental health concerns or a history of recurrent emergency room visits due to increased symptoms or suicide ideation.

(TR 20.)  With regard to Plaintiff's physical impairments, the ALJ also looked at Plaintiff's medical record and found, in part, that it "does not document any objective decline in the claimant's condition or overall level of functioning."  (TR 20.)  The ALJ recognized that "[n]o additional surgery has been performed or recommended."  (TR 21.)  He then noted that Plaintiff exhibited no discomfort or difficulty when entering the hearing room and did not have any difficulty sitting through the hearing.  (TR 21.)

After determining at Step 3 that Plaintiff's conditions did not meet or equal a listed impairment, the ALJ addressed Plaintiff's RFC.  (TR 22.)  He began by setting forth the standard

under which he viewed the information and then stated, in full, as follows:

> The State Agency psychologist has adequately assessed claimant's mental limitations. The medical evidence reveals that the claimant's level of functioning has remained stable with treatment.
>
> Recent medical evidence with regard to claimant's lower back, the MRI performed in May of 2010, reveals evidence of mild degenerative changes in her back, which could cause some pain symptoms. The undersigned has utilized a residual functional capacity that is based on an analysis completed by the State Agency on March 23, 2009, which indicates the claimant's allegations that she is unable to perform any prolonged sitting, standing or walking. The claimant also testified at the hearing that she is able to sit or stand for 1 1/2 hours at a time. However, the claimant was not credible with regard to her allegations that she cannot work a full eight-hour day. As noted above, the MRI shows only mild degenerative changes, and she exhibited no signs of discomfort while sitting for the entire approximately 20-minute hearing.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(TR 22.)

Even a liberal reading of the ALJ's decision gives little to no indication of the weight the adjudicator gave to the Plaintiff's statements or the reasons for that weight. With regard to her mental limitations, the ALJ appears to have relied entirely on the State Agency psychologist's report, and he gives no indication whether he even considered Plaintiff's statements, or the weight he afforded them. And with regard to Plaintiff's physical limitations, the ALJ appears to have relied on the "mild degenerative changes" shown on her MRI and on Plaintiff's ability to sit for approximately 20 minutes without showing discomfort. Plaintiff, however, never claimed to have any problems sitting for 20 minutes. Thus, the ALJ's rationale for discrediting her appears to have little or no basis.

Defendant argues that the objective medical evidence supports the ALJ's determination, and

9

he sets forth an argument based on that evidence. (*See*, *generally*, Docket no. 9.) But "it is the [ALJ's] rationale that is under review, not defense counsel's." *Christephore v. Comm'r of Soc. Sec.*, No. 11–13547, 2012 WL 2274328 (E.D. Mich. June 18, 2012). Thus, regardless of whether Defendant can now support that ALJ's ultimate finding, "this court cannot engage in post-hoc rationalizations." *See Hunter v. Astrue*, No. 1:09 CV 2790, 2011 WL 6440762, at *4 (N.D. Ohio Dec. 20, 2011) (citing *S.E.C. v. Chenery*, 332 U.S. 194, 196 (1947)). That is, "the Commissioner's post hoc rationalization is not an acceptable substitute for the ALJ's lack of rationale." *Schroeder v. Comm'r of Soc. Sec.*, No. 11-14778, 2013 WL 1316748, at *13 (E.D. Mich. Mar. 1, 2013) (Hluchaniuk, M.J.) (concluding that "the ALJ will have to re-assess plaintiff's credibility and additional vocational expert testimony may be required, depending on the conclusions the ALJ's (sic) reaches on remand regarding plaintiff's RFC"). Moreover, even if the ALJ had specifically set forth the medical evidence upon which he determined Plaintiff's subjective complaints were not credible, the ALJ failed to consider any of the factors set forth in 20 C.F.R. § 416.929(c)(3), many of which may support Plaintiff's assertions. Therefore, the Court recommends finding that the ALJ did not employ the proper legal standards when determining Plaintiff's credibility.

## VI.   CONCLUSION

Because the ALJ did not employ the proper legal standards when determining Plaintiff's credibility, the Court has no basis under which to determine whether the ALJ's hypothetical to the VE was appropriate. Therefore, this case should be remanded under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. Because a sentence-four remand is warranted, Plaintiff's Motion for Summary Judgment (docket no. 8) should be GRANTED IN PART and should be remanded for a decision that is "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and

the reasons for that weight;" Plaintiff's Motion should be DENIED IN PART with respect to her request that the Court order Defendant to award benefits.  And because the Court recommends granting Plaintiff's Motion in part, Defendant's Motion for Summary Judgment (docket no. 9) should be DENIED.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: April __, 2013          s/ Mona K. Majzoub
                               MONA K. MAJZOUB
                               UNITED STATES MAGISTRATE JUDGE

11

**PROOF OF SERVICE**

      I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: April __, 2013          s/ Lisa C. Bartlett_____
                                     Case Manager